UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DOUGLAS LEE HAMLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:13-CV-321 |
| v. ) | |
| ) | Judge Mattice |
| DAN WALKER and RONALD HIGGS,[1] ) | |
| ) | Magistrate Judge Lee |
| Defendants. ) | |

## MEMORANDUM OPINION

This is a pro se prisoner's complaint for relief pursuant to 42 U.S.C. § 1983. Before the Court are two unopposed motions for summary judgment filed by Defendants Walker and Higgs [Docs. 40 and 43]. As Plaintiff did not file a response to the motions for summary judgment, Plaintiff has waived any opposition to these dispositive motions. *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd mem.* 577 F.2d 740 (6th Cir. 1978); E.D. TN. LR 7.2. For the following reasons, Defendants' motions for summary judgment [Docs. 40 and 43] will be **GRANTED** and this action will be **DISMISSED**.

**I. BACKGROUND**

The Court has previously summarized the allegations of the complaint as follows:

Plaintiff filed this complaint as an inmate in the Morgan County Correctional Complex ("MCCX"). Defendants are Dan Walker, the Health Administrator at MCCX, and [Ronald] Higgs, the doctor at MCCX (Doc. 2 p. 3).

Plaintiff alleges that on March 20, 2009, while in the custody of the Department of Correction for the State of Tennessee ("TDOC"), he had a cornea transplant performed on his right eye at Vanderbilt Hospital (Doc. 2 p. 4). Plaintiff states that after this surgery, doctors prescribed the application of

---

[1] Although Plaintiff named "Edmund Higgs" as a Defendant in this case [Doc. 2 p.1], the record establishes that the party that Plaintiff intended to sue is named "Ronald Higgs" [Doc. 28 p. 1]. Accordingly, the Clerk is **DIRECTED** to correct the Court's docket to reflect that Ronald Higgs is the proper Defendant in this case.

antibiotic solution and steroid drops six times a day in his eye, as well as a certain cleaner and conditioner solution for his eye contacts (*Id.*). Plaintiff alleges that doctors told him that if he did not comply with these orders, the transplant would fail (*Id.*).

Plaintiff also states that he received the prescribed eye medications while in TDOC custody until May 14, 2012, the date he entered MCCX, at which point he no long[er] received them despite filing numerous sick call requests and grievances relating the seriousness of the issue (*Id.*). Plaintiff also states that he has not been seen by an eye specialist despite requiring such care for his condition (*Id.*). Plaintiff alleges that, as a result of not receiving the eye medications and the denial of medical care, he has lost eye sight in his right eye (*Id.*). Plaintiff alleges that the denial of medical care, failure to conduct an adequate examination, failure to carry out medical orders, failure to follow professional standards and/or prison medical care protocols, failure to provide access to specialist care, and negligence or medical malpractice all establish deliberate indifference (*Id.* at 4–5).

An exhibit filed with the complaint shows that on July 4, 2012, plaintiff filed a grievance in which he asserted that the lack of proper medical care and the failure to provide the prescribed eye medications were ongoing problems causing plaintiff to lose sight (Doc. 2-1 p. 4–5). As such, plaintiff requested the prescribed eye medications and medical treatment by an eye specialist to restore his vision (*Id.* at 4). In his grievance, plaintiff specifically stated that Walker had violated TDOC policies by failing to instruct medical personnel to provide plaintiff with the prescribed eye solution and that Walker would have known plaintiff needed the prescribed medicine if he had reviewed plaintiff's medical records and sick call complaints (*Id.* at 4–5). On July 11, 2012, a supervisor responded to plaintiff's grievance by stating "[i]nmate to see Optometrist on Wednesday 7/18/12, the next date the O.D. is at the facility" (*Id.* at 4).

On July 27, 2012, at a hearing on plaintiff's grievance, the grievance panel noted plaintiff's assertion that medical's refusal to provide him with prescribed medications had resulted in his right eye going blind and turning gray (Doc. 2-1 p. 3). The chairman of the hearing committee told the committee that "every time he [would] go and talk with Mr. Hamlin about his grievance, he [would] notice that Mr. Hamlin's right eye would get darker and darker" (*Id.*). The grievance panel further noted that plaintiff had stated that he saw an optometrist on July 18, 2012, who told him that the medicines had been ordered but not received, and that it was too late because the cornea had already failed (*Id.*). The grievance panel's response to plaintiff's grievance was "[e]nsure inmate is supposed to get the meds he [i]s supposed to have" (*Id.*). On August 28, 2012, the Deputy Commissioner of Operations for TDOC signed a memorandum indicating that he concurred with the supervisor's response to plaintiff's grievance (*Id.* at 1).

Plaintiff also alleges that when an inmate files a grievance, the grievance staff brings the grievance to the attention of the individuals responsible for the

2

> matter the grievance concerns and that Walker is "responsible for medical care generally and for arranging for specialized care to intervene [in] prisoner's care. He is Health Administrator" (Doc. 2 p. 5). Plaintiff further asserts that (1) Walker's failure to resolve his complaints through in-house grievances constitutes deliberate indifference; and (2) Walker's failure to provide for the upkeep of cornea transplant through follow-up examination, treatment, and care by a specialist constitutes deliberate indifference and negligence (*Id.* at 60).
>
> Plaintiff repeatedly refers to Walker's "deliberate indifference" (Docs. 2, 2-1). Additionally, in a document filed with the complaint, plaintiff cites *Estelle v. Gamble*, 429 U.S. 97, 105 (1976), for the assertion that "intentionally interfering with the treatment once prescribed" constitutes deliberate indifference and alleges that defendants have done exactly this (Doc. 2-4 p. 2, 4). Plaintiff also alleges "an informal policy at [MCCX] of giving low priority to the medical needs of segregation inmates and of refusing to provide them with medical care outside the prison unless their medical condition is life-threatening" (Doc. 2-5 p. 2).

[Doc. 16 p. 1–4].

Also, specifically as to Defendant Higgs, Plaintiff alleges that he is responsible for reviewing all new admission charts/medical records, sick call complaints, and certain referrals to doctors [Doc. 2 p. 5].

The only claims that remain in this action are Plaintiff's claims that Defendants Walker and Higgs were negligent and/or deliberately indifferent to Plaintiff's medical needs with regard to his eye medications and/or need for medical care for his eyes [Docs. 2, 5, and 17]. Plaintiff seeks various forms of relief, including a declaratory judgment, an injunction/restraining order, compensatory damages, and punitive damages [Doc. 2 p. 6–8].

## II. SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). "Summary judgment is

3

proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Mazur v. Young*, 507 F. 3d 1016 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). The moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

Summary judgment is an integral tool for securing the "just, speedy[,] and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The moving party is entitled to judgment as a matter of law "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of truth at trial." *Id.* at 322.

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded; at a minimum, the Court is required to examine the motion to ensure that the movant has met its initial burden. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). In the absence of a response, however, the Court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). The court still must "intelligently and carefully review the legitimacy of [] an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* at 407. In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Id.* If the court determines that the unrebutted evidence set forth by the moving party supports a conclusion that there is no genuine issue of material fact, the court will determine that the

4

moving party has carried its burden, and "judgment shall be rendered forthwith."  *Id*. at 410 (alteration omitted).

**III.   ANALYSIS**

Defendant Walker's unopposed motion for summary judgment is supported by an affidavit from Defendant Walker that sets forth sworn testimony that:

(1) Defendant Walker had no notice of Plaintiff's complaints regarding his failure to receive eye medications and/or specialized medical care for his eyes before he was served with this lawsuit;

(2) As Health Administrator, Defendant Walker did not have a duty to review prisoner medical records and/or sick call requests unless he was assigned the duty of resolving a prisoner's grievance; and

(3) No duties regarding Plaintiff's grievance were assigned to Defendant Walker.

[Doc. 40-1].

As this evidence establishes that Defendant Walker had no involvement in the denial(s) of medical care and/or negligent medical care alleged in Plaintiff's complaint and Plaintiff has not rebutted this evidence, Defendant Walker has carried his burden of setting forth evidence that no genuine issue of material fact remains in this case.  Accordingly, Defendant Walker's motion for summary judgment [Doc. 40] will be **GRANTED**.

Similarly, Defendant Higgs' affidavit in support of his motion for summary judgment sets forth sworn testimony that:

(1) Defendant Higgs reviewed Plaintiff's medical records within a reasonable period of time after Plaintiff's arrival at MCCX;

(2) Nothing in Plaintiff's medical records indicated any need for eye medications at or around Plaintiff's arrival at MCCX;

(3) Defendant Higgs provided the medical care Plaintiff's medical records indicated Plaintiff needed at or around Plaintiff's arrival at MCCX in a manner that met or exceeded the standard of care;

(4) Defendant Higgs was unaware of Plaintiff's requests for eye medications/contact lens solution because those issues were handled by his nursing staff;

(5) Defendant Higgs was unaware of the grievance Plaintiff submitted regarding medical care for his eye(s) because he had no involvement with grievances;

(6) Defendant Higgs was never asked to examine or treat Plaintiff's eyes;

(7) The staff nurses appropriately scheduled Plaintiff to see the optometrist without consulting Defendant Higgs;

(8) Upon learning that Plaintiff had not received medications ordered by the optometrist who had examined Plaintiff in July 2012, Defendant Higgs resolved the issue in a reasonable amount of time and in a manner that met or exceeded the standard of care;

(9) Defendant Higgs later approved another provider's order for eye medications for Plaintiff in September 2012; and

(10) Defendant Higgs was not otherwise involved in Plaintiff's eye care.

[Doc. 43-1].

As this evidence establishes that Defendant Higgs reasonably treated all of Plaintiff's medical issues of which he was aware in a manner that met or exceeded the standard of care and did not intentionally deny Plaintiff any medical care, and Plaintiff has not rebutted this evidence, Defendant Higgs has carried his burden of setting forth evidence that he no genuine issue of

6

material fact remains in this case. Accordingly, Defendant Higgs' motion for summary judgment [Doc. 43] will be **GRANTED**.

IV. **CONCLUSION**

For the reasons set forth above, Defendants' motions for summary judgment [Docs. 40 and 43] will be **GRANTED** and this action will be **DISMISSED**. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Thus, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE